OPINION
{¶ 1} Senior Parole Officer, Kim Thomas-Abel ("appellee"), was placed on Involuntary Disability Separation for the asserted reason that her psychological state rendered her unfit for duty. Ohio law gives state employees certain due process rights in the event of a separation. The issue before us is whether the Franklin County Court of Common Pleas correctly determined that appellee's due process rights had been violated. *Page 2 
 {¶ 2} Appellee began her career with appellant, Ohio Department of Rehabilitation and Correction ("ODRC"), in 1983. She left for other employment in 1986, returned to ODRC in 1989, and has remained there until the present. In September 2004, appellee returned from a temporary assignment where she had received good evaluations and began working for a new supervisor.
 {¶ 3} The new supervisor, Tammy Lamb, reported that she had received employee complaints that appellee was engaging in bizarre behavior and performance issues and, in January 2005, Deputy Director of the Division of Parole and Community Services, Harry Hageman, placed appellee on administrative leave with pay pending a fit for duty psychological evaluation.
 {¶ 4} ODRC contracted with Dr. Kenneth Manges, a psychologist, to evaluate appellee. Dr. Manges interviewed appellee and administered a battery of psychological tests. Dr. Manges diagnosed appellee with Generalized Anxiety Disorder, Histrionic Personality Disorder, with Depressive Personality Features, and Dependent Personality Features. He did not find paranoia, obsessive compulsive behavior or problems with her interpretation of reality. He stated that the test results supported the findings that she had significant interpersonal difficulties including impulsivity, poor judgment, and acting-out behavior. Dr. Manges recommended continued suspension from duty for 90 days, continued outpatient therapy with an anger management focus, monthly reports by her providing therapist, and a re-evaluation prior to her return to work. Dr. Manges also informed ODRC that he was available for a follow-up interview in the future.
 {¶ 5} After receiving the Manges report, ODRC scheduled an involuntary disability separation hearing. Appellee was notified that she would have the opportunity *Page 3 
to provide any medical or other documentation pertaining to the extent of her disability and potential for resuming the essential functions of her pre-disability position. She was informed that the hearing was not a disciplinary proceeding. She was told that she could bring a representative to observe the pre-separation meeting, but the representative would not be allowed to participate in the meeting.
 {¶ 6} A copy of Ohio Adm. Code 123:1-33-02(D) was enclosed with the letter. That section provides in pertinent part:
 * * * Under those proceedings [pre-separation proceedings], a hearing shall be scheduled and advance written notice of at least seventy-two hours shall be provided to the employee. If the employee does not waive the right to that hearing, then at the hearing the employee has the right to examine the appointing authority's evidence of continuing disability, to rebut that evidence, and to present testimony and evidence on the employee's own behalf.
 {¶ 7} At the hearing, Harry Hageman was presented with the Manges report and a letter from appellee's therapist, Linda Bohl. Bohl stated that appellee was capable of returning to work and resuming her duties, although she suggested a "trial period." Hageman found the Manges report to be more credible, and issued an involuntary disability separation ("IDS") order on May 26, 2005.
 {¶ 8} Appellee appealed the order of IDS to the State Personnel Board of Review ("SPBR"). The Administrative Law Judge ("ALJ") issued a procedural order that stated the case was to proceed with two separate record hearings. The first was to be a procedural phase hearing to determine if ODRC could establish a prima facie case and prove that it complied with the procedural requirements for the order of IDS. If ODRC could prove compliance, the second hearing was to be a substantive phase hearing in *Page 4 
which appellee would have the opportunity to rebut the evidence submitted by ODRC in its prima facie case.
 {¶ 9} The initial hearing proceeded as scheduled. The record shows that the parties and the ALJ anticipated there would be a second hearing if procedural requirements were met.
 {¶ 10} The substantive hearing never took place. Instead, the ALJ issued a report in which she stated the procedural elements had been satisfied, and a second hearing was unnecessary because the Manges report and the Bohl letter had already been admitted, and the Manges report was more probative. The ALJ recommended that the IDS order be affirmed without a substantive phase hearing. The SPBR affirmed the order placing appellee on IDS on May 26, 2005.
 {¶ 11} Appellee appealed to the Franklin County Court of Common Pleas. The common pleas court analyzed both the pre-separation and post-separation hearings under due process standards. First, the court examined the pre-separation notice provided by ODRC to appellee and found it to be defective on its face. The notice did not contain any reasons why appellee was being placed on IDS.
 {¶ 12} Second, the court determined that the decision of the ALJ to eliminate the substantive second phase of the post-separation hearing violated appellee's due process rights. The court then looked at how that hearing was conducted and concluded that appellee was denied due process because she was not given an opportunity to contest the report upon which the decision was predicated and that she was not given an opportunity to confront the persons who had characterized her behavior as bizarre. *Page 5 
 {¶ 13} ODRC appealed the decision of the common pleas court, asserting as error the following:
 The Trial Court erred in its analysis of what pre- and post-deprivation due process is due when an employee faces an involuntary disability separation pursuant to O.A.C. § 123:1-33-02.
 {¶ 14} Our task on appeal is to determine whether the common pleas court erred in finding that the decision of the board was not in accordance with law because of due process violations. In Pons v. StateMed. Bd. (1993), 66 Ohio St.3d 619, the Supreme Court of Ohio stated:
 * * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. * * *
Id. at 621.
 {¶ 15} An appellate court does, however, have plenary review of questions of law. Johns 3301 Toledo Café, Inc. v. Liquor ControlComm., Franklin App. No. 07AP-632, 2008-Ohio-394, at ¶ 14. This case primarily concerns a question of law.
 {¶ 16} Due process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings. Chirila v. Ohio StateChiropractic Bd. (2001), 145 Ohio App.3d 589, 593, citing LTV Steel Co.v. Indus Comm. (2000), 140 Ohio App.3d 680, 688. "However, due process is a flexible concept and calls for such procedural safeguards as the particular situation demands." Id. at 688-689. Procedural due process embodies the concept of fundamental fairness, and the linchpin of such fairness is notice *Page 6 
and an opportunity to be heard. Cleveland Bd. of Edn. v. Loudermill
(1985), 470 U.S. 532, 546, 105 S.Ct. 1487. As the United States Supreme Court discussed in Loudermill, a public employee holds a property interest in the expectation of continued employment including notice of the charges against them, an explanation of the employer's evidence, and an opportunity to respond before being removed for disciplinary reasons. Id.
 {¶ 17} ODRC argues that appellee was given all the process she was due because an involuntary disability separation is much less serious than a job loss. In making this argument, ODRC ignores rules and procedures that were established for public employees such as appellee and urges this court to apply a lower standard to her. Fundamental fairness dictates that appellee be treated the same as other public employees placed on IDS. Fundamental fairness also necessitates that both the employer and the employee be held to the rules established for such proceedings, and that the rules should not change in the middle of the proceedings.
 {¶ 18} With respect to the order placing appellee on IDS, we must agree with the court of common pleas that the order was defective on its face. Ohio Adm. Code 124-3-01 provides, in pertinent part, as follows:
 (A) "Section 124.34 orders" and orders of involuntary disability separation may be affirmed only if each of the following five criteria are satisfied:
 * * *
 (4) The order shows, on its face, a list of particulars which form the basis for the order;
 * * *
 (B) Disaffirmance of an order under this rule shall not be a bar to filing another "section 124.34 order" or an order of *Page 7 
involuntary disability separation based upon the same allegations.
ODRC failed to comply with this rule.
 {¶ 19} In addition, the instructions attached to the order contain the following paragraph:
 The Appointing Authority must set forth in detail the particular acts and circumstances constituting the offense(s) charged. Evidence presented on appeal must be limited to that which relates to the charge(s) made; hence the Appointing Authority must set forth the charge(s) broad enough to encompass all the evidence the Appointing Authority intends to offer. It is equally important that the Appointing Authority fully state the ground(s) for the action.
 {¶ 20} ODRC failed to comply with the department's own instructions. ODRC acknowledges that Ohio Adm. Code 124-3-01 states that, without a list of particulars, the order cannot be affirmed. However, ODRC argues that a different section, Ohio Adm. Code 124-13-03, permits the employer to cure such a defect, and therefore the omission is not jurisdictional. ODRC further argues that appellee waived her right to contest this omission because she failed to raise the issue until she filed objections to the report and recommendation of the ALJ.
 {¶ 21} At the procedural hearing before the ALJ, ODRC had the burden of establishing a prima facie case including compliance with the requirements of Ohio Adm. Code 124-3-01. Appellee was under no obligation to insure that ODRC met its burden by directing it to add a list of particulars and thereby cure a defect in the order. ODRC's argument incorrectly shifts the burden to the employee to point out any procedural defects before the close of ODRC's case. This is similar to a criminal *Page 8 
prosecution that fails to present any evidence of an element of a crime, or a civil case in which a party leaves itself open to a motion for a directed verdict.
 {¶ 22} Here, appellee waited until ODRC had rested the procedural portion of the case to file her objections. Had the ALJ continued with the substantive phase of the hearing, appellee could have raised the issue as part of her opportunity to be heard by attacking the weight and sufficiency of ODRC's evidence. When the ALJ issued a report and recommendation without conducting the substantive hearing, appellee raised the objection at the appropriate time. The SPBR could have then declined to affirm the order of IDS.
 {¶ 23} Concerning post-separation procedure, the common pleas court found that appellee's due process rights had been violated because she was first promised and then denied the opportunity to call witnesses, present testimony, and refute the psychological evaluation of Dr. Manges. We agree.
 {¶ 24} A review of the hearing transcript shows that the ALJ and all counsel were expecting the substantive phase of the hearing to proceed if ODRC did not prevail at the procedural phase. For example, appellee's counsel argued in his closing argument that Dr. Manges' report was not credible, and ODRC's counsel objected saying that the subject needed to be reserved for the second phase of the hearing. In ODRC's closing argument, counsel requested that the matter be scheduled for the next phase of the hearing. The ALJ herself instructed the parties that they were there only to discuss procedural aspects. She went on to say that if ODRC met the procedural requirements, "then we would schedule a second hearing, which would be the substantive phase where we would then look at the medical evidence and determine if there is evidence there to *Page 9 
sustain the I.D.S., so any questions?" (Tr. at 5.) Clearly, all persons involved in the hearing were expecting a bifurcated hearing in which the substantive issues would be addressed in the second phase.
 {¶ 25} Not only was it reasonable for appellee to expect the second phase to take place, it is clear from the record that her counsel had prepared to call witnesses and submit exhibits. Appellee's "Notice of Witnesses and Exhibits," indicates that she intended to call a number of witnesses and introduce a number of exhibits.
 {¶ 26} ODRC speculates when it assumes that the evidence presented during the procedural phase obviated the need for the substantive phase. Appellee was never given the opportunity to attack the weight and sufficiency of the Manges report or to provide evidence or testimony to overcome the evidence relied upon. Dr. Manges' report discloses that, although he administered a battery of tests and declared appellee unfit for duty, he does not explain how her test results and interview rendered her unable to perform the essential requirements of her job. It is equally possible that, had appellee been given the opportunity to confront the witnesses against her and to call witnesses and present evidence in the substantive phase of the hearing, the ALJ might have found that Dr. Manges' conclusion was not backed up by objective psychological evidence. Thus, the cancellation of the second substantive hearing violated due process.
 {¶ 27} Based on the foregoing, we overrule the single assignment of error, and affirm the decision of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and SADLER, JJ., concur. *Page 1